IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:25-CV-103-BO

EFREN GARCIA URRUTIA, )
)
    Petitioner, )
)
v. )   O R D E R
)
FRANCIS DIOSMAR ARENA FLORES, )
)
    Respondent. )

## BACKGROUND

Petitioner, father, filed a petition based on the Hague Abduction Convention seeking the return of his four-year-old son initialed O.R.G.A. to Mexico. Knowing that respondent had been contemplating a move to the United States, petitioner sought a custody order in the Family Court of Ecatapec de Morelos, Tecamac, Mexico. [DE 7, ¶¶ 3, 5]; [DE 29, ¶¶ 3, 5]. That court approved the parties' custody agreement [DE 7, ¶ 6]; [DE 29, ¶ 6], which grants petitioner visitation rights. Petitioner's provided translation states in relevant part:

> "CARE AND CUSTODY. FIRST. The parties agree that the minor with reserved identity of initials O.R.G.A. remains under the FINAL guardianship and Custody of his parent FRANCIS DIOSMAR ARENA…
> . . .
> SECOND. The parties agree that the visits and coexistence between the parent EFREN GARCIA URRUTIA and the minor whose identity is reserved with the initials O.R.G.A. It will take place on SATURDAYS and SUNDAYS of every fifteen days, so the non-custodial parent will pick up their minor descendant on SATURDAY at TEN HOURS (10:00) at the home where the parent exercises care and custody of the child, returning him on SUNDAY day at TWENTY HOURS (20:00) at said address.
> . . .
> The parties at this time state that they have communication to be informed of all the minor's issues, as well as in the event that one of the parties wishes to go out with their minor child on vacation or to visit somewhere outside the State of Mexico or Mexico City, but within the Mexican Republic, notice must be given with due

opportunity, letting both know the reason and cause of their trip, the place and time of the trip, method of transfer, whether by plane or car, as well as the address and, if applicable, the telephone number where they are staying, in the event that the trip is abroad, they must also meet the requirements indicated in previous lines, in addition to the fact that for the issuance of the passport or visa, both parents must necessarily attend for authorization, stating that they must allow the communication with the other parent during said trip; or, where appropriate, when they change their address, they must be notified in advance, for which the parties provide their telephone numbers.
. . .
It is prohibited to retain or hide the minor from the presence of both parents."

[DE 7-5, p. 10-12].

O.R.G.A., age four, lived in Mexico until his mother took him to the United States between December 3 and 6, 2023. [DE 7, ¶ 8]; [DE 29, ¶ 8]. On December 3, 2023, petitioner visited with O.R.G.A. pursuant to his rights under the custody agreement. [DE 7, ¶ 10]; [DE 29, ¶ 10]. On December 6, 2023, respondent informed him that she had taken O.R.G.A. to the United States. [DE 7, ¶ 11]; [DE 29, ¶ 11]. On February 24, 2025, petitioner commenced this action. [DE 1].

## ANALYSIS

**I. Hague Convention**

The multinational Hague Abduction Convention, implemented by Congress through the 1980 International Child Abduction Remedies Act (ICARA), aims to deter parents from taking children across national boundaries to resolve their custody disputes in more sympathetic jurisdictions. *Alcala v. Hernandez*, 826 F.3d 161, 169 (4th Cir. 2016). Because O.R.G.A. is under sixteen years old and both Mexico and the United States are signatories who had already enacted the Convention at the time of the abduction, ICARA applies to this case. To make out a prima facie petition for the return of a child under the Convention, the petitioner (the left-behind parent) must show by a preponderance of the evidence that "(1) the child was 'habitually resident' in the petitioner's country of residence at the time of removal, (2) the removal was in breach of the

petitioner's custody rights under the law of his home state, and (3) the petitioner had been exercising those rights at the time of removal." *Bader v. Kramer*, 484 F.3d 666, 668 (4th Cir. 2007).

If the petitioner proves the elements of the prima facie case for return, the court must order the child's return to the country where he habitually resided before the abduction unless the respondent makes out one of the few and narrow affirmative defenses. *Id.* Even if the petitioner has made out a prima facie case for return, return is not required when the respondent can prove by a preponderance of the evidence that the petition for return was filed more than one year after the removal and the child is now settled in the new country. *Id.* at 668-669.

## II. Petitioner's Prima Facie Case; *Ne Exeat* Rights

If petitioner had made out a prima facie case for removal, the first and third elements would be trivially satisfied: O.R.G.A. had never left Mexico before being removed on or in the days immediately before February 6th, 2023, and therefore must have been "habitually resident" in Mexico prior to his removal. [DE 7, ¶ 8]; [DE 29, ¶ 8]. Until O.R.G.A.'s departure, petitioner was "actually exercising" what rights the custody order conferred on him, given that he visited with O.R.G.A. at his last opportunity before the abduction. [DE 7, ¶ 10]; [DE 29, ¶ 10]. The remaining question is whether those rights are, within the meaning of the Convention, "rights of custody" which when violated by the child's abduction may trigger the return remedy.

The Convention distinguishes between "rights of custody" and mere "rights of access." *Abbott v. Abbott*, 560 U.S. 1, 9 (2010). The abducting parent's violation of the other's "right of access" is not enough to trigger the return remedy. *Id.* Rights of custody include "rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence." *Id.* Whether a foreign jurisdiction has conferred "rights of custody" on a party is a

3

question of law for the Court. *Garcia v. Pinelo*, 808 F.3d 1158, 1159 (7th Cir. 2015). "In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." *Fed. R. Civ. P.* 44.1.

The custody order contains two relevant provisions. The first requires that each parent give the other notice and a means to communicate with O.R.G.A. when taking him out of the country. [DE 7-5, p. 10]. The other provision prohibits each parent from retaining or hiding the presence of the child from the other. This latter provision does not mention departure from the country. [DE 7-5, p. 12].

Petitioner contends that these provisions embody *ne exeat* rights [DE 43, ¶ 41], which are rights to approve or veto the child's departure from the country. *Ne exeat* rights qualify as "rights of custody" for the Convention's purposes under the framework of *Abbott*, 560 U.S. 1, because they enable the rightsholder to determine the place of the child's residence by determining whether he may leave the country.

No portion of the translated custody order squarely prohibits taking O.R.G.A. out of Mexico without the consent of both parents. The provision concerning travel focuses on communication. By its text, it prohibits each parent from cutting off communication between the other parent and O.R.G.A. while traveling; it does not prohibit travelling with O.R.G.A. or condition travel on the consent of both parents. The other provision states in full, "[i]t is prohibited to retain or hide the minor from the presence of both parents." This provision does not engage the prospect of travel. One parent might have hidden O.R.G.A. from the other without leaving Mexico, or one parent might conceivably have left Mexico with O.R.G.A. but not hidden him from the other. Since neither relevant provision of the custody order addresses the right to approve or veto

4

travel between countries, but focuses elsewhere, the order does not appear to grant petitioner *ne exeat* rights.

Petitioner claims he specifically requested provisions in the custody order requiring his consent before Respondent could leave Mexico with O.R.G.A., and that the court included such provisions, though this is not plain from the text of the translated custody order. [DE 43 ¶ 23]. Ultimately, this Court need not decide whether petitioner's rights are *ne exeat* rights and therefore "rights of custody" within the meaning of the Convention, because its disposition is based on other grounds.

### III. Respondent's Affirmative "Well-Settled Child" Defense

Assuming arguendo that petitioner has made out a prima facie case for O.R.G.A.'s return, the next consideration is respondent's affirmative defenses. Of the four affirmative defenses to an abduction petition, respondent has argued to support two of them: first, respondent argues returning O.R.G.A. to Mexico would subject him to a "grave risk" of physical or psychological harm, and second, she argues he is "well-settled" in the United States.

First, the record does not support application of the "grave risk" defense. Respondent's allegations of petitioner's grim character and conduct, which petitioner denies, do not provide the clear and convincing evidence of a grave risk of harm that this defense requires.

However, respondent succeeds on her "well-settled child" defense. This defense is available when the petitioner filed more than one year after the abduction occurred and the respondent proves by a preponderance of the evidence that the child is now settled in the new country. *Bader*, 484 F.3d 666 at 668-69. Respondent took O.R.G.A. from Mexico to the United States between December 3 and 6, 2023. [DE 7, ¶ 9-11]. This action was commenced on February

5

24, 2025. The time elapsed between them being more than one year, the only remaining issue is whether O.R.G.A. is well-settled in the United States.

To guide this determination, the Fourth Circuit in *Alcala*, 826 F.3d 161 at 171 considered the factors listed in *Lozano v. Alvarez* 697 F.3d 41 (2d Cir. 2012), *aff'd sub nom. Lozano v. Montoya Alvarez*, 572 U.S. 1 (2014), noting that they are not exhaustive. Those factors are:

> (1) the age of the child; (2) the stability of the child's residence in the new environment; (3) whether the child attends school or day care consistently; (4) whether the child attends church [or participates in other community or extracurricular school activities] regularly; (5) the respondent's employment and financial stability; (6) whether the child has friends and relatives in the new area; and (7) the immigration status of the child and the respondent.

*Id.* at 57.

O.R.G.A. is four years old. He and respondent have resided in Raleigh since shortly after their arrival in the United States. [DE 40, ¶ 20]. The child is in school. [DE 40, ¶ 25]. He participates in family and community gatherings. [DE 40, ¶ 28]. Respondent and O.R.G.A. have family in the area. [DE 40, ¶ 27]. They have an asylum application pending. [DE 40 ¶ 20]. Aside from the *Lozano* factors, O.R.G.A. has learned to speak and understand English [DE 40, ¶ 26], and respondent is engaged to be married. [DE 40, ¶ 29].

O.R.G.A.'s age, the lack of record information about respondent's financial stability, and his and his mother's pending immigration status either weigh toward finding O.R.G.A. is not well-settled or are ambivalent to the analysis. Nevertheless, on balance, O.R.G.A. is well-settled in the United States, and respondent succeeds on her affirmative defense.

## CONCLUSION

Accordingly, for the foregoing reasons, the petition for return is hereby DENIED and the matter is ADJUDGED in favor of respondent. As the evidentiary record supports resolution on the merits, respondent's motion to dismiss [DE 44] and renewed motion to dismiss [DE 47] are

DENIED without prejudice as MOOT. Respondent's motions to file an answer out of time and to seal that answer are GRANTED. The clerk is DIRECTED to STRIKE the filing written in Spanish [DE 19] for noncompliance with Local Rule 10.1(k).

SO ORDERED, this _15_ day of September 2025.

_Terrence Boyle_
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE